**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
SHIVA STEIN,                                  :
                                              :
      Plaintiff,                        : Civil Action No. 1:21-cv-6043
                                              :
v.                                            :
                                              : **COMPLAINT FOR VIOLATIONS OF**
SYKES ENTERPRISES, INCORPORATED,              : **SECTIONS 14(a) AND 20(a) OF THE**
MARK BOZEK, JAMES S. MACLEOD,                 : **SECURITIES EXCHANGE ACT OF**
CHUCK SYKES, WILLIAM D. MUIR, JR.,            : **1934**
LORRAINE LEIGH LUTTON, VANESSA                :
C.L. CHANG, CARLOS E. EVANS, W.               : **JURY TRIAL DEMANDED**
MARK WATSON, and JEANNE                       :
BELIVEAU-DUNN,                                :
                                              :
      Defendants.                       :
---------------------------------------------------------  :

      Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

      1.    This is an action brought by Plaintiff against Sykes Enterprises, Incorporated ("Sykes or the "Company") and the members Sykes board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Sykes by Sitel Group ("Sitel") and its affiliates.

      2.    Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on July 12, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Florida Mergersub, Inc., a Florida corporation and a wholly-owned subsidiary of Sitel ("Merger Sub"), will merge with and into Sykes with Sykes surviving the merger and becoming a wholly-owned subsidiary of Sitel (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Sykes common share issued and outstanding will be converted into the right to receive $54.00 in cash (the "Merger Consideration").

3.       As discussed below, Defendants have asked Sykes stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Goldman & Sachs & Co. LLC ("Goldman & Sachs") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.       It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.       For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Sykes stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the proxy solicitor of Sykes is headquartered in this District. In addition, Sykes is listed on the New York Stock Exchange, which is also headquartered in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of Sykes common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Mark Bozek has served as a member of the Board since May 2019.

11. Individual Defendant James S. Macleod has served as a member of the Board since May 2005 and Non-Executive Chairman of the Board since May 2016.

12. Individual Defendant Chuck Sykes has served as a member of the Board since August 2004 and is the President and Chief Executive Officer.

13. Individual Defendant William D. Muir, Jr. has served as a member of the Board since 2014.

14. Individual Defendant Lorraine Leigh Lutton has served as a member of the Board since 2014.

15. Individual Defendant Vanessa C.L. Chang has served as a member of the Board since 2016.

16. Individual Defendant Carlos E. Evans has served as a member of the Board since May 2016.

17. Individual Defendant W. Mark Watson has served as a member of the Board since May 2018.

18. Individual Defendant Jeanne Beliveau-Dunn has served as a member of the Board since 2021.

19. Defendant Sykes is incorporated in Florida and maintains its principal offices at 400 North Ashley Drive, Suite 2800, Tampa, FL 33602. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "SYKE."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.  The Proposed Transaction**

22. Sykes, together with its subsidiaries, provides customer experience management, multichannel demand generation, and digital transformation services. The Company's customer care services include handling billing inquiries and claims, activating customer accounts, resolving complaints, cross-selling/up-selling, and prequalifying and warranty management, as well as offers health information and dispatching roadside assistance. Its technical support services

comprise support around complex networks, hardware and software, communications equipment, Internet access technology, and Internet portal usage. The Company also provides customer acquisition services, such as digital marketing, multichannel demand generation, and inbound up-selling and sales conversion, as well as outbound selling of its clients' products and services. In addition, it offers robotic process automation consulting, implementation, hosting, and managed services that help clients in front, middle and back-office processes, as well as self-service, insight analytics, and digital learning; fulfillment services consisting of order processing, payment processing, inventory control, product delivery, and product returns handling; and enterprise support services comprising technical staffing services and outsourced corporate help desk solutions. The Company provides its services through phone, email, social media, text messaging, chat, and digital self-service support. It serves corporations, medium-sized businesses, and public institutions in the financial services, communications, technology, transportation and leisure, healthcare, and other industries. The Company operates in the United States, Canada, Latin America, Australia, the Asia Pacific Rim, Europe, the Middle East, and Africa. Sykes Enterprises, Incorporated was founded in 1977 and is headquartered in Tampa, Florida.

23.     On June 18, 2021, Sykes announced that it had entered into the Proposed Transaction with Sitel:

> TAMPA, Fla., June 18, 2021 (GLOBE NEWSWIRE) -- Sykes Enterprises, Incorporated ("SYKES" or the "Company") (NASDAQ: SYKE), a leading full life cycle provider of global customer experience management services, multichannel demand generation and digital transformation, and Sitel Group®, a leading global provider of customer experience (CX) products and solutions, today announced they have entered into a definitive merger agreement in which Sitel Group, through a wholly owned subsidiary, will acquire all of SYKES' outstanding shares of common stock at a purchase price of $54 per share in a transaction valued at approximately $2.2 billion on a fully diluted basis. The purchase price represents a premium of 31.2% over SYKES' closing

price on June 17, 2021, and a premium of 29.1% over the 30-day volume-weighted average price of SYKES' common stock.

President and Chief Executive Officer of the Company Chuck Sykes stated, "This combination marks a major milestone in our 40-plus year operating history. Thanks to the hard work of our team members, this transaction validates the execution of our vision, strategy, our differentiated full lifecycle business model and promises immediate and certain value for our stockholders at an attractive premium. As we embark on the next phase of our journey, there is an opportunity to take the business to historic heights with a proven partner with similar culture and values. In Sitel Group, I am confident that we have a valuable partner with a solid heritage of deep industry knowledge and experience, solid industry reputation, a shared vision and a people-first culture to better serve customers."

"The strategic rationale driving this combination is solid," said Laurent Uberti, President and Chief Executive Officer of Sitel Group. "By joining forces with such a healthy, profitable and financially solid U.S. brand that also has a stellar reputation, we will further enhance our global reach. With this combination, we will be a more competitive BPO player with a wide range of CX products and solutions, leveraging EXP+™, the Enterprise Experience Platform from Sitel Group, especially with the addition of SYKES' CX solutions in digital, social media and robotic process automation (RPA), through their suite of digital transformation capabilities such as Clearlink and Symphony. By combining the two companies, our expanded geographic footprint, multi-shore solutions and greater capacity to serve customers will make us better equipped to help our customers navigate the rapid changes within the sector together. We began this journey more than 25 years ago and our entrepreneurial mindset still guides us, along with our talented people around the world and our people-centric values. We are excited about our future and continuing our story with best-in-class CX delivery for our customers and a greater employee experience for our combined 155,000 people. We have tremendous respect for Chuck Sykes and the business he and his family have built and all they have accomplished."

The proposed transaction is not subject to a financing condition, is expected to be completed in the second half of 2021 and is subject to the approval of SYKES' shareholders and customary closing conditions, including expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and other regulatory clearances. Upon the closing of the transaction, which was approved unanimously by the Company's

> Board of Directors, SYKES will become a privately-held company and its shares will cease trading on Nasdaq.
>
> "On behalf of the SYKES board of directors, this transaction delivers significant and immediate value to our shareholders. We followed a disciplined process in forming a special transaction committee of the Board of Directors, which was chaired by independent director Carlos Evans, to facilitate the Board of Directors' evaluation of strategic alternatives. After a thorough analysis, in concert with our advisors, the special transaction committee and the Company's Board of Directors determined that this transaction is in the best interests of SYKES and its shareholders," commented James S. MacLeod, SYKES' Chairman of the Board of Directors.
>
> **Advisors**
> Goldman Sachs & Co. LLC served as exclusive financial advisor and Shumaker, Loop & Kendrick, LLP served as legal counsel to SYKES. The special transaction committee of the Board of Directors of SYKES was advised by Ballard Spahr LLP. Lazard Freres SAS served as financial advisor and Freshfields Bruckhaus Deringer US LLP served as legal counsel to Sitel Group. Committed debt financing has been provided by BNP Paribas to Sitel Group.

\* \* \*

24. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Sykes's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.   **The Materially Incomplete and Misleading Proxy Statement**

25. On July 12, 2021, Sykes filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits

7

material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Sykes Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections by Sykes management and relied upon by Goldman & Sachs in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Sykes management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. The Proxy Statement provides values for the non-GAAP metrics: Adjusted EBIT, Adjusted EBITDA, and Unlevered Free Cash Flow, but fails to provide a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate

suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide reconciliation table of all non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Goldman & Sachs's Financial Analysis*

31. With respect to Goldman & Sachs' *Illustrative Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the range of illustrative terminal values

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

9

for the Company; (ii) the inputs and assumptions underlying the use of multiples ranging from 7.0x to 9.0x to a terminal year estimate of the LTM Adjusted EBITDA; (iii) the inputs and assumptions underlying the range of discount rates ranging from 8.0% to 9.0%; (iv) the inputs and assumptions underlying the use of perpetuity growth rates ranging from (0.2)% to 2.5%; (v) the company-specific inputs, including the Company's target capital structure weightings, the cost of long-term debt, after-tax yield on permanent excess cash, if any, future applicable marginal cash tax rate and a beta for the Company; (vi) net cash of the Company as of March 31, 2021; (vii) the range of illustrative equity values; and (vii) the number of fully-diluted outstanding shares of common stock as of June 15, 2021.

32. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the EV/NTM Adjusted EBITDA multiples ranging from 6.5x to 8.5x to NTM Adjusted EBITDA estimates for each of the fiscal years 2021 to 2023; (ii) the estimated net cash of the Company as of December 31 for each of the fiscal years 2021 to 2023; (iii) the total number of fully diluted shares of Company common stock estimated by management to be outstanding as of December 31 of each of the fiscal years 2021 to 2023; (iv) the inputs and assumptions underlying the use of the discount rate of 8.5%; and (v) the Company's cost of equity.

33. With respect to Goldman Sachs' *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the consideration paid in the selected transactions observed in the analysis.

34. With respect to Goldman Sachs' engagement as the financial advisor of the Company, the Proxy Statement fails to disclose whether divisions other than the Investment Banking Division of Goldman Sachs were engaged by the Company, Parent, or affiliates and third

parties for any services in the two-year period ending June 17, 2021 and the amount of compensation paid to Goldman Sachs, if any.

35. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial

analysis that were prepared by Goldman & Sachs and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

41. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Sykes within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Sykes, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Sykes, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Sykes, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

      C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

      D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

      E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 14, 2021

**MELWANI & CHAN LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*